THE STATE v. REED, *Appellant.*

Division Two, November 9, 1893.

1. **Criminal Practice:** INSTRUCTIONS. The unnecessary repetition of instructions should be avoided.

2. ———: ———: MURDER. All the instructions given in a cause should be read together and the omission of the court to include the element of premeditation in one of its instructions defining murder in the first degree, will not constitute reversible error where the other instructions fully cover the subject.

3. **Criminal Law:** MURDER: DELIBERATION: PREMEDITATION. The word "deliberately" as applied to murder is a generic term and includes the term "premeditatedly," and the latter is included in malice aforethought.

4. **Criminal Practice:** INDICTMENT. The indictment must allege every substantive fact that is necessary to establish the guilt of the accused.

5. ———: MURDER: ACCIDENTAL KILLING: INSTRUCTIONS. Where the only defense to the charge of murder is accidental killing, a refusal to instruct on the theory of self-defense is proper.

6. ———: ———: ———: ———. Where the evidence for the defendant shows the killing to have been accidental, while that for the state shows it to have been murder, a refusal to instruct on murder in the second degree is proper.

*Appeal from Jackson Criminal Court.*—HON. J. W. WOF-FORD, Judge.

AFFIRMED.

*J. D. Wendorff* for appellant.·

(1) The court erred in refusing the fifth instruction asked by the defendant. The burden is upon the state to prove, beyond a reasonable doubt, all essential ingredients of the offense charged in the indictment. *United States v, McGlue*, 1 Curtis, C. C. 1; *State v. Wingo*, 66 Mo. 181; *State v. Houx*, 109 Mo. 654; *Commonwealth v. McKie*, 1 Gray, 61; Wharton on Criminal Evidence [9 Ed.], sec. 329; Greenleaf on Evidence [15 Ed.], sec. 49, note, and cases cited; *Commonwealth v. Whitaker*, 131 Mass. 224; *People v. Millard*, 53 Mich. 63. (2) The court erred in giving the eighth instruction asked by the state, because it did not require the state to prove premeditation. Premeditation is a necessary element of murder in the first degree. Revised Statutes, 1889, sec. 3459; *State v. Curtis*, 70 Mo. 594; *State v. Foster*, 61 Mo. 549; *State v. Mitchell*, 64 Mo. 191; *State v. Lane*, 64 Mo. 319; *State v. Talbot*, 73 Mo. 347; *State v. Hennell*, 97 Mo. 105; *State v. O'Hara*, 92 Mo. 59; *State v. Sharp*, 71 Mo. 218. (3) The court erred in declaring the law in the seventh instruction asked by the state to be that there was "no evidence tending to show the existence of any such passion or provocation." (4) The court erred in refusing to instruct the jury as to murder in the second degree.

*R. F. Walker*, Attorney General, *Morton Jourdan*, assistant, and *M. K. Brown*, Prosecuting Attorney, for the state.

(1) The instructions given for the state correctly declared the law. The words "malice aforethought" are equivalent to the words with "malice" and "premeditation." *State v. Dale*, 108 Mo. *loc. cit.* 207; *State v. Lowe*, 93 Mo. *loc. cit.* 574; *State v. Katovsky*, 74 Mo.

249; *State v. Curtis*, 70 Mo. 598; *State v. Brooks*, 92 Mo. *loc. cit.* 553; *People v. Vance*, 21 Cal. 400. The term "deliberately" contains in itself all that is meant by the term "premeditatedly." *State v. Dale*, 108 Mo. *loc. cit.* 207. (2) Where the evidence proves a defendant guilty of murder in the first degree, and the court correctly instructed upon that degree of murder in one instruction, a second instruction authorizing a conviction of murder in the first degree, which leaves out all the elements of willfulness, deliberation, premeditation and malice aforethought, is harmless, even if erroneous. *State v. Bulling*, 105 Mo. *loc. cit.* 219; *State v. Anderson*, 98 Mo. *loc. cit.* 473; *State v. Patterson*, 73 Mo. *loc. cit.* 713; *State v. Holme*, 54 Mo. *loc. cit.* 164; *State v. Hopper*, 71 Mo. 425; *State v. Talbott*, 73 Mo. 347; *State v. Ellis*, 74 Mo. 207; *State v. McGinnis*, 76 Mo. 326; *State v. Snell*, 78 Mo. 240; *State v. Nelson*, 88 Mo. 126; *State v. Anderson*, 89 Mo. 312; *State v. Butterfield*, 75 Mo. 305. Instructions need not be as technical as the indictment. *State v. Pullens*, 81 Mo. 387. In criminal, as in civil cases, the instructions must all be read and considered together, and when, if so considered, they properly declare the law, and are not misleading, they are not objectionable. *State v. Noeninger*, 108 Mo. 166; *State v. Matthews*, 98 Mo. *loc. cit.* 130; *State v. Butterfield*, 75 Mo. *loc. cit.* 305; *Dougherty v. Railroad*, 97 Mo. 647; *Muelhausen v. Railroad*, 91 Mo. 332; *Noble v. Blount*, 77 Mo. 239. The court properly instructed only on murder in the first degree and accidental homicide. *State v. Jones*, 79 Mo. 441; *State v. Nugent*, 71 Mo. 139; *State v. Sneed*, 91 Mo. 559; *State v. Rider*, 95 Mo. *loc. cit.* 484; *State v. Wilson*, 88 Mo. 13; *State v. Bulling*, 105 Mo. 220. The threats of the defendant against the deceased were admissible; the nearness or remoteness of threats to the date of the commission of the crime does not affect their admissibility or competency. *State*

*v. Gluhn,* 97 Mo. *loc. cit.* 689; *State v. McNally,* 87 Mo. 644; *State v. Adams,* 76 Mo. 355; *State v. Grant,* 79 Mo. *loc. cit.* 137; *Carver v. Huskey,* 79 Mo. 509; *State v. Crawford,* 99 Mo. 74.

GANTT, P. J.—The defendant, Martin Reed, a negro man, was indicted on the fifteenth of November, 1890, by the grand jury of Jackson county, for the murder of his wife, Hester Reed, on the sixteenth of September, 1890, at her home on Fourteenth street in Kansas City. He has been twice convicted, under this indictment, of murder in the first degree. The trial judge, Hon. H. P. White, awarded him a new trial after the first conviction. The cause was continued at the instance of the defendant twice before he was put upon his first trial, and was continued for him for one cause and another, at the November term, 1891, the March term, 1892, and the November term, 1892. At the March term, 1893, he was awarded a change of venue from Independence to Kansas City. He was finally placed on his trial at the April term, 1893, and convicted of murder in the first degree, and sentenced to be hung. It is from this last verdict and sentence this appeal is prosecuted.

The testimony tends to prove a most heartless and atrocious murder. It shows that Hester Reed, the murdered woman, had been married to the defendant more than twenty-five years. During all these years, according to the statements of defendant himself, and the uncontradicted evidence in the case, she had made him a most exemplary wife, had borne him a family of seven children, had aided in supporting him and herself and had assisted in rearing and educating their large family of children. The testimony shows that not long before the commission of the murder the defendant had attempted to cut his wife's throat, and

had only been prevented by the interference of a daughter, who happened to be present; that he had beaten his wife and driven her from her home and children; threatening to kill her if she returned; that he then, a short time after driving her from home, left home himself, and his wife, who had been sheltered by a kindly disposed neighbor, then deemed it safe to return home to her children and did so, and then applied for a divorce from defendant. When defendant heard of her application for divorce he was greatly incensed and threatened that before she should have a divorce he would kill her.

The murder was committed on Tuesday about noon. The Sunday before the murder, defendant, who was still staying away from home, went to the house where the wife and children lived, threatened and abused her; the next day (Monday), although still suffering from bodily injuries which she had received as the result of a brutal assault by him, the wife had gone out to do some washing to support her family, and when she was away defendant again came to the house searching for her, still abusing and threatening her. On the forenoon of the next day, it being Tuesday, the day on which the homicide was committed, he came again to the house, and finding her at home renewed his abuse and threats. As soon as he left that forenoon, the deceased, alarmed for her safety, taking one of their children, a son named Junius, with her, went to the justice of the peace to get out a warrant against defendant to put him under bonds to keep the peace; returned, and arrived at her home about noon on this day.

Defendant heard of this, and became greatly incensed thereat, and immediately went to the place where he had been sleeping, got the pistol with which the murder was committed, and went to the home of his family. The deceased, Hester Reed, had just

returned from her mission to the justice of the peace; the rest of the family were down in the basement eating their dinner; one daughter, almost grown, was away at school; two of the children, the youngest, were playing in an adjoining room; another one, Mary McHenry, a married daughter, had just left, taking her husband, who was at work, his dinner.   The deceased was sitting in the front room, talking with a neighbor woman, Kate Moore, when defendant entered with his pistol in his hand, walked up to the deceased, addressed vile and abusive language to her, exclaiming, "you old bitch, you have served a writ; I will serve a writ on you, and serve it well," drew the pistol down upon her, and seized hold of her.   She struggled to escape from him, fell upon the floor, and then, while she was lying upon the floor, upon her right side, endeavoring to arise, defendant, standing back of and above her, in a line with her body, about four feet from her, fired two shots into her prostrate body; one entering the left arm near the shoulder, ranging downward, and coming out between the elbow and forearm; the other shot, the fatal one, entering the back of her left shoulder, and ranging downward and inward, passing through the lung, heart and liver, and lodging in the walls of the abdomen. The deceased struggled up, and, staggering out of the door on the sidewalk, died almost instantly.

Defendant then turned and grappled with the mother of the deceased, who had rushed up the stairway from the basement upon hearing the first shot, and endeavored to shoot her also; but she struggled from him, escaped into an adjoining room, barred the door, and, jumping from an open window, escaped. Just before she reached the sidewalk she heard another shot; *defendant had gone into the next room, and, placing the pistol to his own breast, had fired,* the ball entering close to the heart; and when the policeman entered, a

short time after, the defendant was found, lying on the floor in the inner room, with a smoking pistol clutched in his hand, unconscious from the loss of blood and the wound in his breast. The defendant had put into execution ,the threats which he had repeatedly made before, of his intention to kill his wife. He was taken to the city hospital, and from there, afterward, when sufficiently recovered, to the county jail, at which place, shortly after being confined there, in a conversation with one of the jailers, Andy O'Hare, about the wound in his breast, he remarked concerning it, "that he came near getting himself with that shot, but hadn't done it, but wished he had succeeded."

The state established the charge of a deliberate murder by proof of threats, and previous attempts to kill; indeed, one rarely encounters in the history of crime, a homicide characterized by more causeless brutality. The guilt of defendant was overwhelmingly proved by the evidence of disinterested neighbors both white and black, and by his own children.

Over and against this mass of evidence upon the part of the state, the defendant offers nothing except his own unsupported and uncorroborated testimony that his wife came to her death by an accidental discharge of the pistol in his attempt to wrest it out of her hand. He explains his possession of the pistol at the time by saying that he suspected one Green of taking beer to his house, and that, as he had whipped Green once before, he merely took the pistol along to protect himself in case he should encounter Green there; that he went into the house, and started to go into another room to see if Green was in there, when his wife, and Kate Moore, the neighbor who was .sitting with her, both took hold of him, without a word having passed between them, and before he had exhibited the pistol,

caught him, and undertook to take it from him, and in the struggle she was accidentally shot.

The physical facts, as to the course of the bullets through the body of the dead woman, rendered defendant's account impossible, and corroborated the testimony of defendant's son, Junius Reed, who saw both the shots fired, and who testified that they were fired by defendant while deceased lay on her right side struggling to raise herself from the floor with her right hand, and with the left side of her body toward defendant, and defendant standing back of and over her, in a line with her body, and with the pistol pointed in a manner in which the balls would range downward, exactly as shown by the *post mortem* examination made by the coroner. Defendant's story was inconsistent, uncorroborated, and utterly improbable, while the testimony of the state, from the lips of defendant's own children, overwhelmingly established a most complete case of murder in the first degree.

The errors assigned relate entirely to supposed misdirection in the instructions given, and in refusing others.

I. There was no error in refusing instruction number 5, prayed by defendant, which informed the jury that the law presumed the defendant innocent of the charge, and that the burden of proving his guilt beyond a reasonable doubt rested upon the state, for the reason, that the court gave the same instruction to the jury in the first, asked by the state, and the third, given of its own motion. A useless repetition should always be avoided.

II. The most serious contention of the learned counsel for defendant, is in regard to instruction number 8 given at the instance of the prosecuting attorney. It is in these words:

"8. If the jury believes from the evidence, that the defendant willfully, that is intentionally, used upon Hester Reed, at some vital part, a deadly weapon as a loaded revolver, or pistol, in the absence of qualifying facts, defendant must be presumed to know the effect is likely to be deadly, and knowing it, must be presumed to intend death, which is the probable and ordinary consequence of such an act; and if such deadly weapon is used without just cause, or provocation, he must be presumed to do it wickedly, or from a bad heart; and if the jury believes that defendant took the life of said Hester Reed by shooting her in a vital part, with a revolver, or pistol, with a manifest design to use such weapon upon her, and with sufficient time to deliberate, and fully form the conscious purpose to kill, and without sufficient reason, or cause, or extenuation, then such killing is murder in the first degree and while it devolves on the state to prove the willfulness, deliberation, and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proved by direct evidence, but may be deduced from all the facts, and circumstances attending the killing, and if the jury are satisfied and can reasonably infer their existence from all the evidence they will be warranted in finding defendant guilty of murder in the first degree."

The criticism on this instruction is that, by giving it, the criminal court dispensed with premeditation as an element of murder in the first degree. We do not think the point is well taken, for several reasons: *First*, the court had already in the sixth and seventh instructions for the state, immediately preceding this instruction, defined "premeditation" to the jury, and had told the jury in plain and concise words that they must find, beyond a reasonable doubt, not only that the killing was done willfully and deliberately, but *pre-*

*meditatedly*.  This court has often held that all the instructions must be read together, and, if all together, they constitute a correct charge to the jury, no error is committed, though some one instruction may not cover the whole case.

But the instruction is not, in itself,. erroneous. This identical instruction came under review in *State v. Wisdom*, 84 Mo. 177, and was held not to be error, but was supported by *State v. Alexander*, 66 Mo. 148; *State v. Wingo*, 66 Mo. 181; *State v. Curtis*, 70 Mo. 594: *State v. Dickson*, 78 Mo. 438.

But, more than this, it is an elemental principle in criminal pleading that the, indictment must allege every substantive fact that is necessary to establish ,the guilt of a defendant.  In *State v. Dale*, 108 Mo. 205, the indictment omitted the word "premeditatedly," but used both "deliberately" and "malice afore-thought."  We held the indictment sufficiently charged premeditation on the ground that the word "deliberately" was a generic term including "premed-itatedly," and because premeditation was also included in the words "malice aforethought." . These last words have been held to mean both "malice" and "premedi-tation;" *State v. Thomas*, 78 Mo. 327; *State v. Lowe*, 93 Mo. 547.

III.  Counsel also insist that the criminal court erred in declaring in the seventh instruction for the state that there was no evidence tending to show the existence of any passion caused by any just or lawful provocation in its definition of deliberation.  Counsel, however, has nowhere indicated where such evidence is to be found in the record.  His claim is entirely at variance with the testimony of his client, who claims the killing was purely accidental, and there is not a word in the state's evidence that, shows the slightest provocation, by word or deed of the deceased, as a

cause for the killing. The instruction was correct and appropriate under the evidence.

IV. There was no error in refusing to instruct on murder in the second degree. The offense was either murder in the first degree, or the defendant was not guilty, because his wife was accidentally shot. The evidence does not tend to show any grade lower than the highest degree of murder, if the state's evidence is to be credited, and, on the other hand, if the jury believed the defendant, he should have been acquitted on the theory of an accidental killing. The jury found against the defendant, and were fully justified in doing so.

The defendant has been accorded every facility for making his defense. Two juries have found him guilty, and no error whatever appears in the transcript before us. The judgment is affirmed. All of this division concur.