## REESE GATLIFF VS. TERRITORY OF OKLAHOMA.

1. CRIMINAL LAW — *Indictment Not Objectionable for Duplicity*—An indictment which charges that the defendant unlawfully attempted to commit a violent injury upon the person of the prosecuting witness, and then proceeds to state facts constituting the crime of assault with a deadly weapon with intent to kill, is not objectionable for duplicity, the words referring to an attempt not being sufficient to charge a criminal attempt under the statute may be disregarded as surplusage.

2. SAME—*Self Defense—Instruction Sufficient*—The court instructed the jury that if one of the defendants shot the prosecuting witness while he was in the act of sticking a hatchet.into the head of the other defendant, the brother of the defendant making the assault, the assaulting defendant honestly believing that his brother would lose his life or receive great bodily injury unless he committed the act constituting the alleged assault. *Held:* That this was sufficient, and it was unnecessary to give an instruction to the effect that it was the duty of one of the defendants to defend his brother from injury.

3. INSTRUCTIONS—*Evidence Not in Record—Instructions on the Evidence Not Reviewed*—This court will not review the action of the district court in giving or refusing to give instructions upon particular matters in evidence where the evidence is not made a part of the record on appeal.

4. SAME—*Reasonable Doubt—Unnecessary Repetition*—It is unnecessary for the trial court to give a special instruction upon the question of reasonable doubt when the court has given a proper definition of a reasonable doubt in its general charge to the jury.

5. SAME — *Instruction That Jury Should Consider the Interest of the Defendant, Proper*—An instruction of the court which charged the jury, among other things, that they should take into consideration the fact that the defendants were interested parties, in determining the weight that should be given to their testimony, was not improper.

6. SELF DEFENSE—*Right to Prevent Deadly Assault Upon One's Brother*—An instruction to the jury to the effect that if such acts were being done by the person assaulted as would lead the assailant to honestly believe that his brother would receive his death or great bodily injury from the person assaulted unless the assailant committed the shooting complained of, then the assailant would be justified in shooting to defend his brother, contains nothing of which the defendant can complain.

7. INDICTMENT — *Felonious Assault — What Included Within*—An assault with intent to do bodily harm without justifiable or excusable cause is included in the charge laid in an indictment of assault with intent to kill, and under our statute which provides that the jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment the defendant may be found guilty of the lesser offense of an assault with intent to do bodily harm.

8. INSTRUCTIONS—*Not Necessary to Include Lesser Offense*—It is not error for the court to fail to instruct the jury that the defendant may be found guilty of a lesser offense included within the indictment and which it is not shown that the evidence tends to prove.

9. COUNTY ATTORNEY—*Improper Statements in Argument*—It is not error for the trial court to refuse to grant a new trial on account of improper language used in the closing argument by the prosecuting attorney where the language could not necessarily prejudice the defendant, when the trial court directed the jury to disregard such statements.

10. SEPARATION *of Jurymen*—Where new trial was asked in the court below on the ground that one of the jurymen separated a short distance from his fellows, and wherein there was conflicting evidence upon the question of the separation, and the court refused a new trial. *Held:* We will not disturb this finding.

*Error from the District Court of Payne County.*

The opinion states the facts.    Affirmed.

*George P. Uhl* and *W. B. Williams* for plaintiff in error.
*C. A. Galbraith, Attorney General,* for the Territory.

The opinion of the court was delivered by

BIERER, J.: The defendants were indicted at the April term, 1892, of the district court of Payne county, charged with an assault upon Earl Bee Guthrey, by shooting him in the left hand and left hip with a shot gun, with intent to kill and murder; and upon trial the defendant, Reese Gatliff, was found guilty of an assault upon said Earl Bee Guthrie, by shooting without justifiable cause, and with intent to injure said Earl Bee Guthrey.

The indictment upon which trial was had was as follows:

"IN DISTRICT COURT IN AND FOR PAYNE COUNTY.

"*Territory of Oklahoma vs. Reese Gatliff, William Gatliff, Defendants.*

"Of the April term of the district court of the First judicial district of the Territory of Oklahoma, within and for Payne county, in said territory, in the year of our Lord one thousand eight hundred and ninety-two, the grand jurors, having been first duly chosen, selected, empaneled, sworn and charged to inquire of offenses against the laws of the Territory of Oklahoma committed within said county, in said Territory of Oklahoma, upon their oaths aforesaid, in the name and by the authority of the Territory of Oklahoma, do find and present: That at and within said Payne county, in said territory, on the twenty-fourth day of June, in the year of our Lord one thousand eight hundred and ninety-two, Reese Gatliff and William Gatliff, late of the county aforesaid, on the twenty-fourth day of June, in the year of our Lord one thousand eight hundred and ninety-two, in the county of Payne and Territory of Oklahoma aforesaid, did then and there unlawfully, knowingly, wilfully and feloniously attempted to commit a violent injury upon the person of one Earl Bee Guthrey; they, the said Reese Gatliff and William Gatliff, were then and there each of them persons of sound mind, and did then and there have a present ability to then and there commit said violent injury; that is, they, the said

Reese Gatliff and William Gatliff, did then and there unlawfully, knowingly, feloniously, purposely and with premeditated malice, shoot, fire and discharge toward, at, against and into the left thigh and left hand of the body of the said Earl Bee Guthrey, one certain shot gun which he, the said Reese Gatliff and William Gatliff then and there in their hands had and held and which shot gun was then and there loaded and charged with gunpowder, leaden balls, shot and bullets, and the said Reese Gatliff and William Gatliff, with said shot gun so loaded and charged as aforesaid, and in their hands so held and had as aforesaid, did then and there shoot, fire and discharge said shot gun at, toward, against and into the body and person of the said Earl Bee Guthrey, with intent, then and there and thereby them, the said Earl Bee Guthrey, unlawfully, feloniously, purposely, wrongfully, wilfully and knowingly and with premeditated malice to kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the Territory of Oklahoma.

"FRANK A. HUTTO, County Attorney."

The defendants demurred to the indictment and saved exception to the overruling thereof.

The only question presented against the sufficiency of the indictment is that it charges two crimes, one of an attempt to commit a felony, under § 2568 of the laws of Oklahoma of 1890, and the other of an assault with intent to kill, under § 2125 of the same statutes.

This objection is not well taken. In so far as the indictment contains language referring to an attempt, it is only of the incipient acts of the crime actually charged, and follows this with a statement of the real and completed crime charged in the indictment. The attempt, the effort to commit the crime charged, is shown to have been successful, to have resulted in the commission of the principal crime set out in the indictment. It was a successful attempt, which, followed up, constituted the crime. A criminal attempt, that is, the crime of the felonious attempt to commit

a crime, is only committed when the attempt has failed, and when the attempt fails, the crime of attempt is committed. When the attempt succeeds, the principal crime has been committed.

The language of this indictment before the words "that is they," is preliminary and unnecessary to the constitution of the crime charged The indictment would have been good without it. This language in the indictment referring to the attempt is not sufficient to charge a criminal attempt, because it does not charge the acts by which the crime of attempt was committed, nor does it charge the effort and the failure. The indictment does fully charge the commission of the crime of an assault with intent to kill; and where an indictment charges one offense properly and sufficiently and is uncertain or insufficient as to another charge, this language as to the other charge may be rejected as surplusage. (*State vs. Smith*, 85 Ind., 553; *State vs. Corrigan*, 24 Conn., 286; *Commonwealth vs. Balkom*, 20 Mass., 281; *Commonwealth vs. Arnold*, 21 Mass., 252; *Burchard vs. State*, 2 Ore., 78.)

The defendant complains because the court refused an instruction that it was the duty of Reese Gatliff to prevent Earl Bee Guthrey from striking William Gatliff on the head with a hatchet, even to the extent of taking the life of said Guthrey. There is a statement in the record that the defendant offered evidence tending to show that when Reese Gatliff shot Earl Bee Guthrey with a shot gun Earl Bee Guthrey was about to strike William Gatliff, his brother, on the head with the sharp part of a hatchet, William Gatliff then being in a personal encounter with R. H. Guthrey, the father of Earl Bee Guthrey. The court instructed the jury that if Earl Bee Guthrey was about to strike William Gatliff with a hatchet and Reese Gatliff honestly believed that Earl Bee Guthrey would kill William Gatliff unless he, Reese Gatliff, shot Earl

Bee Guthrey, that then Reese Gatliff would be justi-fied in his act.

This instruction was properly given, and it was un-necessary for the court to instruct the jury as to what the duty of Reese Gatliff was as to the defense of Wil-liam Gatliff.    Reese Gatliff was not being prosecuted for misprision of a felony by failing to prevent a fe-lonious assault upon William Gatliff.    He was prose-cuted and convicted of making an inexcusable assault upon Earl Bee Guthrey.    The question in the case was not as to whether Reese Gatliff was obliged to shoot Earl Bee Guthrey, but the question was to as to whether he was justified in shooting him.    It was a question of excuse and not of obligation; and when the court instructed as to the law upon the alleged justification of the otherwise admittedly felonious as-sault, this was all that was necessary.

The court was asked to give several instructions to the effect that if the Guthreys had had the Gatliffs in-dicted and arrested before the commission of the al-leged assault, for the purpose of compelling them to submit to the designs of the Guthreys, then the jury might take this into consideration in determing who brought on the affray; and also to the effect that if the town of Payne Center, where the offense is claimed to have been committed, had been platted, under regulations of the land department, into streets or public highways, that the burden of proof that the highway where the offense is claimed by the defend-ants to have been committed, and which it is claimed the Guthreys were obstructing, had been vacated, would be upon the prosecution.    The defendants also excepted to the giving of an instruction that the jury should consider the record of conviction of certain witnesses of misdemeanor, as touching upon the cred-ibility of the witnesses.

The evidence in the case is not in the record and

there is no statement of it to show that the defendants had ever been arrested by the Guthreys, and nothing to show that Payne Center had been platted under government regulations or otherwise, and there is nothing to show that any of the defendants' witnesses had been convicted of a misdemeanor, or that this instrument in any way affected the defendants; and where the evidence is not in the record this court will not review errors assigned upon the giving or refusal to give instructions based upon the particular parts of the evidence in the case.

There is no error in the court refusing to give the instruction asked by the defendant defining a reasonable doubt. The court instructed the jury "that a reasonable doubt, as used in these instructions, is such a doubt, in the mind of a reasonable man, as causes him to stop and hesitate and say, 'I am not satisfied' when acting with reference to the graver and more important affairs of life. It is not a mere possibility of the innocence of the defendants; but if the jury from a careful consideration of all the evidence and facts and circumstances in proof in the case can say that they have an abiding conviction of the truth of the charge made in the indictment, then they are satisfied beyond a reasonable doubt, and should find the defendants guilty."

This was a proper statement to the jury of what the law means by a reasonable doubt. (Sackett's Instructions to Juries, 715).

And it was unnecessary for the court to give the instruction asked by the defendants, although the instruction asked by them on this question was substantially the same as that given by the court, and it would have been unnecessary repetition, in no way assisting the jury, to have given it. A court may properly refuse a special charge asked when it is

embodied in its own instructions. (*Morrow vs. State*, 26 S. W. 395).

The court properly instructed the jury that they were the sole judges of the facts in the case, and of the credibility of the witnesses, and of the weight to be given to the testimony of any of the witnesses; that, in determining the credibility of any witness and the weight to be given to the testimony of such witness the jury should consider the interest of such witness in the event of the suit, his or her prejudice or ill-feeling, his or her deportment or manner on the witness stand, and all other facts and circumstances in proof in the case touching the credibility of the witness, and that, in determining the credence and weight to be given to the testimony of the defendants, the jury should consider the fact that they were the defendants, and the interest which they had in the event of the suit, with all other facts and circumstances in proof in the case touching their credibility, and then give their testimony such credence and weight as the jury shall think it deserves.

It is not improper for the court to instruct the jury that the testimony of the defendant, in a criminal case, is to be weighed by the same rules that govern the testimony of other witnesses; and the defendant is always an interested party; and the interest which a witness has may always be taken into consideration in determining the weight to be given to such testimony.

There is absolutely nothing in the defendants' objection to the thirteenth instruction given by the court. It was to the effect that if Earl Bee Guthrey was about to strike William Gatliff on the head with a hatchet, in such a way as to endanger his life, as was claimed by the defendants in their justification, and the defendant, Reese Gatliff, "honestly believed

that his brother, William Gatliff, would lose his life or receive great bodily injury from the assault of the said Earl Bee Guthrey with such hatchet, and then and there shot the said Earl Bee Guthrey, for the purpose of saving the life of William Gatliff, or to prevent his receiving great bodily injury, in such case the shooting was justifiable and the defendants would not be guilty of the crime charged in the indictment."

There is nothing in this instruction of which the defendant, Reese Gatliff, could complain. It extended the right of self-defense which a person had at common law to defend with force an assault upon his master, servant, parent, child, husband or wife, and was in favor of the defendant upon a question about which there is some dispute, as to whether the right of self-defense of a member of one's own family extends to the defense of a brother. The situation must have been such, in any event, as to lead defendant, Reese Gatliff, to honestly believe that his brother would suffer great injury unless he disabled or killed his brother's assailant, before Reese Gatliff would be justified in shooting.

The defendants were indicted, charged with an assault with intent to kill, under § 2125 of the statutes of Oklahoma of 1890, and the defendant, Reese Gatliff, was convicted of an assault with intent to do bodily harm and without justifiable or excusable cause, under § 2155 of the same statute. The defendant assigns error in the court's instructing the jury that the latter of these offenses is a lesser one than, and included within, that of the former. The means prescribed in these two sections by which the offense may be committed are, in substance, identical, and the material difference lies only in the difference of intent. In the one the assault is with intent to kill; in the other it is with intent to do bodily harm. The offenses are both of the same character, the assault to do bodily

harm being embraced within, and lesser, than that of assault with intent to kill. An assault with intent to kill necessarily includes an assault with intent to do bodily harm; for a person cannot be killed without bodily harm being done.

Section 5683 of the statutes of 1890 provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

The offense of an assault without justifiable or excusable cause, with intent to do bodily harm, being included within the charge of an assault with intent to kill, the jury were at liberty to find the defendant guilty of either of the offenses charged, as the evidence would justify. (*State vs. Burwell*, 34 Kan., 312.)

Objection is made to the instructions because the court did not instruct the jury that they might find the defendant guilty of an offense as low as that of a simple assault. While it is true that a defendant may be indicted for murder and found guilty of an assault and battery, (*State vs. O'Kane*, 23 Kan., 244,) yet it is unnecessary under an indictment for murder or for an assault with intent to kill that the court should instruct the jury that the defendant may be found guilty of an assault and battery, much less of simple assault. If the evidence tended to show that the defendant was guilty of an assault with intent to kill, or of assault with intent to do bodily harm, or was innocent, as we must presume in the absence of the evidence, and on the record before us, that it did, it would be improper for the court to instruct the jury that the defendant might be found guilty of some lesser offense and one of which the evidence did not tend to prove him guilty. (*State vs. Mize*, 36 Kan., 187; *State vs. Mowry*, 37 Kan., 369.)

It is unnecessary for the court to give an instruction

that the defendant may be found guilty of a lower offense where the evidence tends to prove only the greater. (*Steiner vs. State,* 26 S. W., 214, Tex.)

Defendants asked a new trial in the court below on the ground of improper language used by the county attorney in the closing argument to the jury. The improper language claimed to have been used by the county attorney was:

"It was stated on the streets that some members of the jury were not honest men, but he (the county attorney) thought otherwise, and believed every member of the jury to be an honest man;" and,

"They are offering to bet on the streets that this jury will hang, but I believe you will all be fair and candid and bring in a verdict in a very short time."

The county attorney denies the use of this language as stated in the affidavits, but admits part of the statements in a modified form.

While it was out of place and improper in the argument to make any such statements, and did not comport with the proper province of the prosecuting attorney in arguing the case to the jury, yet there is nothing in the language which would necessarily predjudice the jury against the defendant, and as the court properly advised the jury to disregard these improper statements, we cannot perceive how any injury resulted to the defendant, and it was not erroneous for the court to refuse a new trial on this account. (*State vs. McCool,* 34 Kan. 617; *Shuler vs. State,* 105 Ind. 289.)

The defendant also moved for a new trial on the ground that one of the jurors was allowed to separate a short distance from the other members of the jury, at one time, while they were, late in the evening, being taken to supper. It is claimed in the affidavits of the defendant that one of the jurors did separate, and was seen talking to an outside person some forty feet

away from the body of jurymen. The name of the particular juryman who thus separated, or of the person with whom he talked, is not given by any of the affidavits presented on behalf of the defendant; and all of the four bailiffs who were placed in charge of the jury, and the only bailiffs who had the jury in charge, swore that at no time during the trial of the case was any one of the jurymen permitted to separate from his fellows; and the trial court having found against the defendant we will not disturb its finding.

Finding no error in the record the judgment of the court below is affirmed.

All of the Justices concurring.