JOHN T. NEW v. TERRITORY OF OKLAHOMA.

(Filed September 2, 1902.)

1. MURDER—Justifiable Homicide—Instruction. On the trial of a cause, where the defendant is charged with murder, and the evidence of the prosecution tends to support the charge, and there is no evidence tending to support the lower crime of manslaughter, in either degree, but the evidence of the defendant tends to prove justifiable homicide, it is not necessary for the court to instruct the jury upon the law of manslaughter in either degree.

2. INSTRUCTIONS—Should Run to Facts and All proper Deductions and Interpretations of Them. The instructions in all cases should run to the facts, and to all proper deductions and interpretations of them, and not to questions not presented or covered by the evidence.

3. VARIANCE—Instruction Refused, Not Error. In a prosecution for murder, where the indictment charges the death to have been

caused by a gunshot wound, and the evidence shows that the deceased was shot with a Winchester rifle, in the side of the face, the ball tending downward and coming out through the neck on the opppsite side, penetrating and lodging in the shoulder, the gun from which the ball was shot having been held within a very short distance of the diseased at the time the shot was fired, and the evidence also shows that after the shot was fired the defendant struck the deceased over the head with the gun, crushing the skull, and where the only evidence that death was not caused from the gunshot wound, as alleged in the indictment, was that of a physician who testified, as an expert witness, that he could not tell whether the death was caused by the gunshot wound or by the blow on the head, but that either might have caused the death, it is not error for the court to refuse to give an instruction that if the jury, from the evidence, entertain a reasonable doubt as to whether the deceased died from the effects of the gunshot wound or from the effects of the blow on the head, that then it was their duty to acquit the defendant.

4. **VERDICT SUSTAINED BY THE EVIDENCE—No Material Error Upon Trial.** Where, after an examination of the entire record, it appears that the defendant has had a fair and impartial trial, and that no material error has been committed by the trial court, and the verdict seems to be amply sustained by the evidence, this court will not disturb the verdict or judgment of the trial court.

(Syllabus by the Court.)

*Error from the District Court of Washita County; before Clinton F. Irwin, Trial Judge.*

*Henry M. Furman, Forrest & Lowe, Massingale & Auxier,* and *Culp, Giddings & Giddings,* for plaintiff in error.

*J. C. Robberts Attorney General, T. A. Edwards, County Attorney,* and *J. W. Smith,* for defendant in error.

The plaintiff in error, John T. New, was indicted by a grand jury of the district court of Washita county, on the charge of murder, and tried and convicted at the May, 1901, term, and sentenced to imprisonment at hard labor in the penitentiary for life. Exceptions were saved to certain rulings, a motion for a new trial filed and overruled, and the case brought to this court for review. Affirmed.

Opinion of the court by

PANCOAST, J.: The errors assigned are grouped under three heads, and we will consider them in the order assigned in plaintiff's brief. First, error in neglecting to instruct the jury as to the different degrees included in the charge, murder and manslaughter. The question is squarely raised here whether it is necessary in all cases of trial for homicide to instruct the jury not only upon the question of murder, but also upon the question of manslaughter, whether the evidence does or does not tend to prove either of the degrees of manslaughter.

We think the law is definitely settled that where the evidence tends to prove only the higher, and does not tend to prove the lower, offense, it is not necessary for the court to give an instruction to the effect that the defendant may be found guilty of the lower offense. (*Gatliff v. Territory*, 2 Okla. 523; *State v. Estepp*, [Kans.] 24 Pac. 986.) And the rule is just as well settled, that where the evidence does tend to prove the lower offense, it is the duty of the court, when requested, to charge the jury as to the law of the lower offense which the evidence tends to prove. (*Lawson v. Territory*, 8 Okla. 1.) The only question, then, is to determine which one of these two rules applies in this case.

By section 2078 of the Statutes of 1893, homicide is defined to be murder:

"When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being."

By section 2086 of the Statutes of 1893, homicide is made manslaughter in the first degree:

"When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

It is the province of the court to determine whether there is or is not any evidence which tends to prove the lower degree of crime, and when the court has determined that there is some evidence tending to prove the lower degree, then it is the duty of the court to instruct the jury, if requested, upon such lower degree. To apply the rule, we must consider the defendant's testimony, as upon this alone can there be any claim of manslaughter.

Just prior to the difficulty, the deceased, with one Walter A. Reeves, was traveling in a wagon along the public highway, going toward his residence. The defendant was at work fixing a wire fence at or near a gate, and also near the intersection of two public highways, or a "cross-roads." The defendant states that he had taken his Winchester rifle to go down by a ravine or creek to shoot ducks, and, coming to the section line, near the road, he saw a steer out in the road, drove him in and proceeded to fix up the fence. As he was at work he saw the deceased and Reeves some distance away, in the road. They were in a wagon, sitting on chairs, and driving two loose horses ahead. That he kept on working, and looked up a second time when the deceased and Reeves were about forty or fifty yards distant. That at that time he saw Doyle, the deceased, reach his hand into his bosom and begin to jerk at something which the defendant says he supposed was a pistol. That he then

just reached down and picked up the Winchester and fired. That his wife had told him that the deceased had made threats, and said that if things kept coming the way they were that he was going to kill the defendant. That there had been some hard feelings between the two, but that they had never had any serious trouble. That he had fired the first shot because he was afraid the deceased would kill him. That this fear was caused by the threats, and the fact that he saw the deceased reaching into his bosom. That as he fired the first shot, the deceased and Reeves jumped out of the wagon, on the opposite side. The defendant could only see their heads when he shot the second time. That he kept along with the wagon for some distance, until the team ran away and passed him, when the two, deceased and Reeves, were in plain view, and the defendant then fired two or three more shots. That Doyle, the deceased, was working at his breast trying to get his pistol out. Reeves turned and ran west. That when Doyle had run to the distance of something like one hundred yards from the defendant, he, the defendant, quit shooting, and Doyle stopped running and turned and looked back, and commenced working at his breast again like he was trying to get his pistol out. The defendant then rested the gun on a post, took aim, and shot Doyle. Doyle kept running. The defendant thought the last shot had struck the deceased, as he threw his hand down on to his leg. The deceased kept running, and got through the fence into the place of one Trotter, some distance away, and went into Trotter's house. The witness, Trotter, states that as Doyle came through the fence, he, the deceased, said, "Do not let him kill me." New, the defendant, was then running down and along the fence, in-

side of his pasture. Doyle, still holding his leg, was running for the house. He did not stop. Trotter went out, to stop New as he was getting over the fence. He met the defendant in the road and said to him, "John, this will never do," and New said, "God damn you, turn me loose," and he jerked loose and followed Doyle. Trotter overtook the defendant at the house, and, assisted by his wife, again tried to stop him. Upon his promising that he would not shoot Doyle in the house, they let the defendant go. Doyle had gone into the house, and into an inner room. New went into the house and found Doyle sitting on the floor behind the door. He opened the door and shot him again, the shot taking effect in the side of the face, going through and coming out at the neck on the opposite side, and lodging in the shoulder. After the defendant fired this shot, he struck the deceased over the head with the gun.

The above includes the entire evidence of the defendant, covering the period of difficulty. Where in it can we find anything that tends to reduce the crime to manslaughter? The first of the three definitions of manslaughter in the first degree, as laid down in the statute, is where the homicide is "perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor." This paragraph cannot apply, because the defendant was not engaged in the commission of a misdemeanor, and it cannot possibly be said that there was no design to effect death.

The second paragraph of the law of manslaughter in the first degree, is where the homicide is "perpetrated without a design to effect death, and in a heat of passion, but in a

12—Vol 12

cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide." Neither can this provision apply, because it cannot be said that the homicide was perpetrated without a design to effect death. The evidence directly shows that there was a design to effect death.

The third paragraph of the section defining manslaughter in the first degree is where the homicide is, "perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed." This is the provision of the law which the plaintiff in error claims applies in this case, and the one which it is claimed the court failed to cover by proper instruction. It will be noticed that the only testimony which it is claimed has a bearing on this subject, and makes this provision of the law of manslaughter applicable, is that of the defendant himself, that when he looked up and saw the deceased, forty or fifty yards distant, he was in the act of putting his hand inside of his clothing in a manner which made the defndant think he was attempting to draw a revolver. Now, if the act of the deceased was sufficient to justify the defendant in this belief, in other words, if the act of the deceased was such as to make a reasonable man believe that he was in imminent danger of his life or great bodily harm, then there was sufficient justification for the defendant's act. But where is the element of unnecessary shooting? That is the principal element of this third subdivision of the law of manslaughter in the first degree. That is, the homicide must have been perpetrated unnecessarily and of course the homicide must have been perpetrated not only unnecessarily, but without premeditation or design.

Where the evidence of the prosecution shows the killing to have been murder, and the evidence of the defendant tends to show the killing to have been justifiable, it is only necessary that the instructions of the court should cover the law of the case as shown by the evidence. (*State v. Hendricks,* [Kans.] 4 Pac. 1050; *People v. Lee Cam,* [Cal.] 11 Pac. 183; *Territory v. Baker,* [N. M.] 13 Pac. 30; *State v. Reed,* 117 Mo. 604; *State v. Fairlamb,* 121 Mo. 138; *State v. Kilgore,* 70 Mo. 546.)

The instruction in all cases should run to the facts and to all proper deductions and interpretations of them, and not to questions not presented or covered by the evidence. (*State v. Rhea,* 25 Kans. 581.)

Viewing the evidence of the defendant alone, from its most favorable standpoint, only one of two conclusions could have been arrived at by the jury. First, if the case for the prosecution was made out, the verdict must have been for murder. If the theory of the defendant was sustained, then the homicide was justifiable. As we view the defendant's testimony, from the record, however, taking it as a whole, and particularly the acts of the defendant from the beginning of the shooting until the end, we do not see how the jury could have arrived at any other conclusion than that the defendant was guilty of murder. Even if the acts of the defendant at the beginning of the shooting, separated from the latter part of the difficulty, could have been deemed justifiable, yet his following up the deceased, his deliberate shooting by laying his Winchester rifle across a fence post, and his continued following up and continued shooting at the deceased after he was wounded, and while he was fleeing,

and the vicious manner in which he spoke to Trotter, when Trotter tried to persuade him to desist, the pursuing of the deceased into the inner room of the house, whence he had fled for safety, and the deliberate manner in which he entered the room and shot the deceased, all show a viciousness of mind for which there is no excuse whatever, and which must have impressed the court and jury with the fact of a premeditated design of the defendant to kill the deceased, and which cannot be held to tend to show that the homicide was perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt had failed.

In the case of *Lawson v. Territory,* 8 Okla. 1, cited by counsel, there was a personal difficulty between the defendant and the deceased at the immediate time of the homicide, of a character which made the question as to which was the aggressor a material one. Notwithstanding that, however, the court instructed the jury that there was no evidence to support or justify a verdict of manslaughter in the first or second degree or of excusable homicide, and that the verdict must be either for murder, as charged in the indictment, or that the homicide was justifiable, and the defendant was not guilty. In the case at bar there was no instruction upon this point. The instructions of the court simply covered the law of murder. Nor did the defendant ask for any instructions covering the law of manslaughter in any degree. We think the plaintiff in error has not properly raised this question. If the defendant was entitled to instructions upon this point, he should have asked the court below to instruct the jury upon the law of manslaughter, and in the absence of such a request it was not error for the court to omit to give such

instructions. It is true that the court should instruct the jury upon all questions involved in the case, but when the court has covered the case with general instructions, it is not error to omit to instruct upon some particular branch of the case deemed advisable by the defendant under his theory of the case, when the defendant has not asked for such instructions. (*Lovett v. State*, 30 Fla. 102; *Kelley v. People,* [Col.] 29 Pac. 805; *State v. Estepp*, [Kans.] *supa; State v. Hendricks,* 4 Pac. 1050.)

The second error alleged is the refusal of the court to give instruction number 5, requested by the defendant. In arguing this proposition, counsel for plaintiff in error fall into a very grave error. They argue the question upon the theory that the testimony of Dr. James McLain was the only evidence offered upon the question as to what caused the death of the deceased. While it is true that this witness stated that he could not tell whether death was caused by the gunshot wound or from the blow on the top of the head, yet it does not follow that the jury could not have found from other evidence what caused the death of the deceased. Either of the two wounds was fatal. The gunshot wound was such that it did not require an expert to show its character or effect. The instruction asked was misleading, when applied to the evidence, and was properly refused.

We see no error in instruction number 15 1-2 on page 228 of the record. It might be a question whether the instruction was necessary at all under the evidence of the case, and was evidently only given because of the statements of the defendant that he was afraid that the deceased would kill him, and this instruction was given for the purpose of cov-

ering this branch of the case, so that the jury would not be misled in the event they believed that the killing was done by reason of the cowardice of the defendant, or, in other words, through fear that amounted to cowardice. It was evidently not given in order to have the jury understand that any degree of courage or cowardice on the part of the defendant could in any way influence the action of the jury in determining the guilt or innocence of the defendant. In fact, it was given for the very purpose of telling the jury that cowardice on the part of the accused should not influence their action.

This concludes the argument of all the errors assigned, although instruction number 17, as given by the court, is among the assignments. This instruction, however, is so manifestly correct, and is so applicable to the evidence of the case, that we cannot think counsel seriously question its correctness. There is no question but that the fatal shot was the one last fired, when the deceased was in the inner room of Trotter's house, where he had retreated from the defendant and was at the time making no demonstration, nor could he have been making any demonstration of which the defendant could have any knowledge, because he was in an enclosed room, and the defendant could under no circumstances have believed at that time that the deceased was about to, or could, do him any bodily harm. Nor could he have believed that he was at the time in any immediate or apparent danger of death or bodily harm at the hands of the deceased, and to instruct that under such circumstances the killing of a human being is not justifiable on the ground of self defense, is not error.

Instructions number 18 and 19 are along the same line, and were necessary to fully cover the proposition treated of. They were not fully warranted by the evidence, but were warranted by the evidence of the defendant alone. By omitting them the court would have failed to cover the entire law of the case.

-    We have examined the entire record. The instructions were fair, and ample to cover all questions presented by the evidence. We see no error in the record, and, believing the accused to have had a fair and impartial trial, and that a correct verdict was arrived at, the judgment of the court below must be affirmed.

Irwin, J., who presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.