MAJOR SMITH v. STATE.

No. A-10202. July 15, 1943.
(140 P. 2d 237.)

E. P. Hill and Geo. L. Hill, both of McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Paul Gotcher, Co. Atty., of McAlester, for defendant in error.

BAREFOOT, J.    Defendant, Major Smith, was charged in the district court of Pittsburg county with the crime of murder, was tried, convicted and sentenced to serve a term of life imprisonment in the State Penitentiary. From this judgment and sentence, he has appealed.

It is first contended that the court erred in admitting, over the objection of defendant, a confession made by him, for the reason that the same was involuntary.

In the case of Lyons v. State, 77 Okla. Cr. 197, 138 P. 2d 142, 149, we had occasion to fully discuss the question of voluntary and involuntary confessions.    It is therefore unnecessary to again review the authorities, or quote therefrom. That case may be referred to by those interested.

The confession in the instant case was clearly a voluntary confession, under the terms of that decision. The defendant in this case sent for the county attorney, who prepared the statement at his request.    The statement was twice read over by defendant.    The defendant testified in his own behalf, and the testimony given by him at the trial was very little, if any, different from the written statement, or confession, made by him the day following his arrest and which was introduced in evidence by the state.

While the defendant testified that he had been hit with a gun by a deputy sheriff on the night before the statement was made, the sheriff and county attorney of Pittsburg county both testified that the defendant was not hit; that no promises of any kind were made to him; that he was informed that under the oral statement he had made theretofore to the county attorney he would be guilty of murder, and that any statement that he made would be used against him at his trial. After being so informed by the county attorney, he freely and voluntarily signed a statement which was prepared by the county attorney, after he had talked with defendant.

In this statement he gave the details leading up to the homicide, but attempted to justify himself by reason of the fact that he did not intend to shoot Mansfield Postum, but rather his father, Nathaniel Postum, and that he did not fire until he had been fired upon. This was the same evidence which he gave at the trial of the case. In the statement he said: "And I stood it so long and couldn't stand it any longer, so last night I decided to have it out with Nathaniel."

He then relates the taking of his shotgun and going to the scene of the homicide on that night for the purpose of meeting the father of the deceased, as above outlined. That part of the statement above quoted is the part of which defendant now complains. The evidence in the record, other than that of the defendant, fully justifies this statement.

In the Lyons case, above referred to, we said:

"There are very few instances when all the facts are taken together but will show one's guilt, if he is guilty, and it is not necessary that a confession be obtained in every case to the end that the guilty party may be properly

brought to justice. The facts in the instant case clearly demonstrate this."

As there stated, it is not always necessary to secure a confession in order to secure a conviction. The facts in this case emphasize this point even better than does the Lyons case. Here the state had two eyewitnesses to the homicide, and other evidence sufficient to connect the defendant therewith. While we think the statement made by the defendant is clearly voluntary and admissible in evidence under the law, yet we again call the attention of county officers to the fact that it is not always necessary that a confession be had to the end that persons may be successfully prosecuted, and they should be doubly careful that defendants who are in their custody are not mistreated and that by reason of such mistreatment statements or confessions are taken from them which are wholly involuntary and under the law cannot be introduced in evidence. By this statement we are not assuming that this defendant was in any way mistreated. The deputy sheriff whom the defendant testified struck him with his gun was present in the courtroom at the time of the trial. Defendant had subpoenaed him as a witness, but did not place him on the stand.

The trial court, when the issue of the confession was presented, dismissed the jury, and out of their presence heard the evidence, which is the procedure followed in this state (see the Lyons case, supra), and first decided that the confession or statement made was voluntary, and therefore admissible. The jury was then recalled to the box, and all of the evidence surrounding the circumstances of the giving and signing of the statement was presented to the jury, and the court then instructed the jury that if they found that it had not been made in a voluntary

manner it was their duty to disregard it. This is the procedure approved by this court. It is first the duty of the court to pass upon the question as a matter of law. The issue is then presented to the jury for their consideration, giving them an opportunity to pass upon the facts, and disregard them if they are of the opinion the statement was not freely and voluntarily made, or was the result of mistreatment of the defendant such as to cause fear upon his part. By this procedure the rights of the defendant are first protected by the court in deciding as a matter of law whether or not the confession is voluntary or involuntary. If he finds that it is voluntary, it is admissible; if involuntary, it is not admissible. The jury then is given an opportunity to pass upon the facts, as above outlined.

From the above statement, we find that the court did not err in admitting in evidence the statement or confession of this defendant.

It is next contended that the court erred in failing to give an instruction on manslaughter in the first and second degrees.

The record discloses that no written request was made by the defendant for this instruction, but that when the county attorney had concluded his argument to the jury, the counsel for defendant orally requested as follows:

"Comes now the defendant and requests the court to submit forms of verdict for manslaughter in all degrees.

"By the Court: Overruled.

"Mr. Hill (for defendant) : Exceptions."

Assuming that this was a sufficient request for the court to submit to the jury the issue of manslaughter in

the first and second degrees, we shall consider the same with reference to the facts and the law.

Defendant in his brief does not cite any authorities upon this proposition, but only asserts that the court erred in not submitting this issue to the jury.

This court has often had under consideration the question of the duty of the trial court with reference to the submission of the different degrees of homicide. The general rule has been followed that in a murder case, the court should submit to the jury for their consideration every degree of homicide which the evidence by any reasonable view suggests. Hopkins v. State, 4 Okla. Cr. 194, 108 P. 420, 111 P. 947; Williams v. State, 12 Okla. Cr. 39, 151 P. 900; Newby v. State, 17 Okla. Cr. 291, 188 P. 124; Fray v. State, 46 Okla. Cr. 260, 285 P. 142; Oglesby v. State, 56 Okla. Cr. 286, 38 P. 2d 32.

It is the duty of the trial court to give to the jury such instructions as he deems necessary and the evidence warrants. This vests the trial court with discretion, which discretion is subject to review on appeal, but it will not be disturbed unless the record presents a clear case of abuse of discretion. As stated in the case of Updike v. State, 9 Okla. Cr. 124, 130 P. 1107, 1110:

"No conviction should be reversed for the failure of the trial court to instruct upon any given issue, unless from the testimony in the case it appears that an honest and intelligent jury could legitimately arrive at a conclusion favorable to the defendant upon such issue."

From the evidence in the instant case, the verdict could only have been murder or not guilty. Under the defendant's testimony, if believed, it would have been justifiable homicide. We have often decided in cases of this character that the court did not err in refusing to

instruct the jury upon the issue of manslaughter. Updike v. State, supra; Akes v. State, 31 Okla. Cr. 386, 239 P. 187; Carle v. State, 34 Okla. Cr. 24, 244 P. 833; Tucker v. State, 66 Okla. Cr. 335, 92 P. 2d 595.

In the case of New v. Territory, 12 Okla. 172, 70 P. 198, 199, the Territorial Supreme Court had before it the question here under consideration. It was there said:

"First. Error in neglecting to instruct the jury as to the different degrees included in the charge, murder and manslaughter. The question is squarely raised here whether it is necessary in all cases of trial for homicide to instruct the jury not only upon the question of murder, but also upon the question of manslaughter, whether the evidence does or does not tend to prove either of the degrees of manslaughter. We think the law is definitely settled that, where the evidence tends to prove only the higher, and does not tend to prove the lower offense, it is not necessary for the court to give an instruction to the effect that the defendant may be found guilty of the lower offense. Gatliff v. Territory, 2 Okla. 523, 37 P. 809; State v. Estep, [44 Kan. 572], 24 P. 986. And the rule is just as well settled that, where the evidence does tend to prove the lower offense, it is the duty of the court, when requested, to charge the jury as to the law of the lower offense which the evidence tends to prove. Lawson v. Territory, 8 Okla. 1, 56 P. 698. The only question, then, is to determine which one of these two rules applies in this case. By section 2078 of the Statutes of 1893 [21 O.S. 1941 § 701], homicide is defined to be murder 'when perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being.' By section 2086 of the Statutes of 1893 [21 O.S. 1941 § 711], homicide is made manslaughter in the first degree 'when perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.' It is the province of the court to determine whether there is or is not any evidence which tends to

prove the lower degree of crime, and, when the court has determined that there is some evidence tending to prove the lower degree, then it is the duty of the court to instruct the jury, if requested, upon such lower degree. To apply the rule, we must consider the defendant's testimony, as upon this alone can there be any claim of manslaughter."

The court then considered the evidence which is in many ways similar to the facts in the instant case. It also analyzes the statutes on murder and manslaughter, finally coming to the conclusion:

"Viewing the evidence of the defendant alone from its most favorable standpoint, only one of two conclusions could have been arrived at by the jury: First, if the case for the prosecution was made out, the verdict must have been for murder. If the theory of the defendant was sustained, then the homicide was justifiable. As we view the defendant's testimony, from the record, however, taking it as a whole, and particularly the acts of the defendant from the beginning of the shooting until the end, we do not see how the jury could have arrived at any other conclusion than that the defendant was guilty of murder."

The evidence of the state was that defendant had for a number of years kept a Negro woman by the name of Mary Harris in his home, and that he had had illicit relations with her. That some time prior to the homicide, Mary Harris left defendant's home, and had gone to the home of Nathaniel Postum, the father of the deceased, Mansfield Postum. That she had lived at his home for about two years, and was living there at the time of the homicide; that they were living together as man and wife and did not marry until one week prior to the trial of this case in the lower court. On the date of the homicide, October 25, 1940, Nathaniel Postum was working at the oil mill in the city of McAlester, his hours being from 3 o'clock in the afternoon until 11 o'clock at night. He lived on a small acreage just east of the city of McAlester.

When he left the oil mill, he walked down the highway a short distance, and then down the railroad tracks. It was dark, and the only light was that reflected from the oil mill.

The evidence reveals that there was ill feeling on the part of the defendant towards the said Nathaniel Postum by reason of the said Mary Harris. That on the night of October 25, 1940, the defendant, knowing that Postum would leave his work at 11 o'clock, and knowing the route he would take to his home, loaded his shotgun and went to a place near the railroad tracks, and, according to the witnesses for the state, laid in wait for the defendant to come along the tracks. The officers testified that they observed a place about 25 feet from the track where the grass had been mashed down, where defendant had lain and where they found the shotgun shells and the wadding, which were used when defendant's gun was fired.

On the night in question Nathaniel Postum's son, Mansfield Postum, age 13 years, had been to an entertainment at the school, and stopped at the oil mill to return home with his father. Mary Harris (now Mary Postum) also went to the oil mill to walk home with Nathaniel. They started down the railroad tracks, and Mansfield took his father's dinner pail and walked on ahead of his father and Mary Harris some 50 or 60 yards. Postum and Mary Harris heard a shot, and Mansfield called out, "Oh, oh Daddy." Nathaniel ran to the boy and asked what was the matter, and the boy replied, "Daddy, I am shot." Nathaniel started to pick the boy up, and another shot was fired, which barely missed him. He then fired three shots from his pistol, in the direction from which the firing had come. He heard the party who fired the shots running from the scene. Mary Harris started running to the boy when Nathaniel did, and he told her

to go and call the law and the doctor. Mansfield was taken to a hospital, where he died in a few hours from the effects of the gunshot wounds. The testimony of Nathaniel Postum was corroborated by Mary Harris.

The sheriff of Pittsburg county and a member of the highway patrol, who were called and examined the premises, gave detail evidence which revealed that the defendant had lain in wait for Nathaniel Postum to pass that way. This evidence was with reference to the condition of the grass, the finding of the shotgun shells and wadding from the gun which was fired, also the distance to the railroad track.

Elizabeth McGill, who was a niece of the wife of the defendant and who lived in defendant's home, testified that the defendant came to her bed in his home some time after 11 o'clock on the night of the homicide, and that she had been asleep, and defendant asked her to tell anyone who might come there for him, "that I rubbed his chest with some tallow and turpentine that night;" but stated that she had not done so.

Defendant testified admitting that he fired the shot that killed Mansfield Postum; that he had gone to the spot to see Nathaniel to ask him why he was carrying a gun for him as he had been told by Mary Harris, and to try to get him not to do so; that he carried his shotgun with him so he could protect himself; that when he saw someone coming down the track carrying a dinner pail he thought it was Nathaniel and that he said, "Nathaniel, I want to talk to you." That the party fired at him, and he returned the fire, killing the boy, Mansfield Postum, who, he says, was between defendant and Nathaniel.

From the above statement of the evidence, and the reading of the authorities, it is revealed that the testimony

of the state clearly shows a case of murder. The evidence of the defendant is based squarely upon justifiable homicide, his own testimony showing that he went to the scene of the difficulty at night, armed. It is probably true that he did not intend to kill the boy, Mansfield Postum. But if he intended to kill the father, Nathaniel Postum, as testified to by the state's witnesses, his actions would constitute murder. If his testimony was true, he would not be guilty. This was the view taken by the trial court, and for this reason he did not submit the issue of manslaughter in the first or second degrees.

The statute provides (section 2223, O.S. 1931, Tit. 21 O.S.A. 1941 § 711):

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

And section 2228, O.S. 1931, Tit. 21 O.S.A. 1941 § 716:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

A careful analysis of these statutes has been made in the case of New v. Territory, supra. The court submit-

ted to the jury an instruction on the law of self-defense which fully covered the issue of justifiable homicide. There was no evidence which warranted the submitting of the issue of manslaughter in the second degree.

We do not find from an examination of the facts in the case at bar that the trial court erred in failing to present these issues to the jury.

For the reasons above stated, the judgment and sentence of the district court of Pittsburg county is affirmed.

JONES, P. J., and DOYLE, J., concur.